IN THE EIGHTEENTH JUDICIAL
CIRCUIT, IN AND FOR SEMINOLE
COUNTY, FLORIDA

CASE NO.: 09-CA-2457-10,

ASHLEY L. JOZWIAK,

        Plaintiff,

vs.

STRYKER CORPORATION, STRYKER SALES
CORPORATION, BREG, INC., I-FLOW
CORPORATION, McKINLEY MEDICAL, LLC.,
MOOG, INC., CURLIN MEDICAL, INC., DJO
INCORPORATED, DJO, LLC, f/k/a DJ
ORTHOPEDICS, INC., DJO OPCO HOLDINGS,
INC., REABLE THERAPEUTICS, INC., ZIMMER
HOLDINGS, INC., B. BRAUN MEDICAL,
SGARLATO R.P., INC. d/b/a SGARLATO LABS,
INC., SMI LIQUIDATING, INC. f/k/a SORENSON
MEDICAL, INC., HOSPIRA, INC., ASTRAZENECA
PHARMACEUTICALS LP, ASTRAZENECA LP,
ASTRAZENECA PLC, ZENECA HOLDINGS, INC.,
APP PHARMACEUTICALS, INC., APP
PHARMACEUTICALS, LLC, ABRAXIS
BIOSCIENCE, LLC, ABRAXIS BIOSCIENCE, INC.,
and ABBOTT LABORATORIES,

        Defendants.

_____/

ORIGINAL RECEIVED
THIS IS A COPY
MARYANNE MORSE
CLERK OF THE COURT, SEMINOLE COUNTY
By: _____ .D.C.
Date: MAR 20 2009

## COMPLAINT

Plaintiff ASHLEY L. JOZWIAK sues Defendants STRYKER CORPORATION;

STRYKER SALES CORPORATION; BREG, INC.; I-FLOW CORPORATION; McKINLEY

MEDICAL, LLC; MOOG, INC.; CURLIN MEDICAL, INC.; DJO INCORPORATED; DJO,

LLC, f/k/a DJ ORTHOPEDICS, INC.; DJO OPCO HOLDINGS, INC., REABLE

THERAPEUTICS, LLC; ZIMMER HOLDINGS, INC.; B. BRAUN MEDICAL; SGARLATO

R.P., INC. d/b/a SGARLATO LABS, INC.; SMI LIQUIDATING, INC., f/k/a SORENSON

EXHIBIT

A

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

MEDICAL, INC.; HOSPIRA, INC.; ASTRAZENECA PHARMACEUTICALS LP;

ASTRAZENECA LP; ASTRAZENECA PLC; ZENECA HOLDINGS, INC.; APP

PHARMACEUTICALS, INC.; APP PHARMACEUTICALS, LLC; ABRAXIS BIOSCIENCE,

LLC; ABRAXIS BIOSCIENCE, INC.; and ABBOTT LABORATORIES and alleges as follows:

    1.      This is an action for damages that exceed $15,000.00, exclusive of costs and

interest.

    2.      Venue is properly laid in this Court because the product which caused injury to

Plaintiff was marketed, sold, distributed and used in Seminole County, Florida.

## PARTIES

    3.      Plaintiff ASHLEY JOZWIAK was at all relevant times a resident and citizen of

Oviedo, Seminole County, Florida.

    4.      Defendants STRYKER CORPORATION and STRYKER SALES

CORPORATION (collectively referred to as "STRYKER DEFENDANTS") are corporations

organized under the laws of the State of Michigan, having their principal places of business in

Kalamazoo, Michigan. STRYKER DEFENDANTS engaged in regular and sustained business

in Florida by selling and distributing their pain pump products in Florida as described below.

    5.      Defendant BREG, INC. is a corporation organized under the laws of the State of

California, having its principal place of business in Vista, California.

    6.      Defendant BREG, INC. conducted regular and sustained business in Florida by

selling and distributing its pain pump products in Florida as described below.

    7.      Defendant I-FLOW CORPORATION is a corporation organized under the laws

of the State of Delaware, having its principal place of business in Lake Forest, California.

2

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

    8.    Defendant I-FLOW CORPORATION conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

    9.    Defendant MCKINLEY MEDICAL, LLC is a company organized under the laws of the State of Colorado having its principal place of business in Wheat Ridge, Colorado.

    10.    Defendant MCKINLEY MEDICAL, LLC conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

    11.    Defendant MCKINLEY MEDICAL, LLC was purchased by Defendant MOOG, INC. in August 2006.

    12.    Defendant MOOG, INC. is a corporation organized under the laws of the State of New York, having its principal place of business in East Aurora, New York.

    13.    Defendant MOOG, INC. is a global corporation that designs and manufactures aircraft, industrial and medical device products.

    14.    Defendant MOOG, INC. conducted regular and sustained business in Florida by incorporating, selling and distributing its pain pump products in Florida as described below.

    15.    Defendant CURLIN MEDICAL, INC. is a corporation organized under the laws of the State of California, having its principal place of business in California.

    16.    Defendant CURLIN MEDICAL, INC. is a subsidiary of MOOG, INC.

    17.    Defendant CURLIN MEDICAL, INC. conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

    18.    Defendant DJO, LLC f/k/a DJ ORTHOPEDICS, INC. is a corporation organized under the laws of the State of Delaware, having its principal place of business in Vista, California.

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

19.    Defendant DJO LLC f/k/a DJ ORTHOPEDICS, INC. conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

20.    Defendants DJO INCORPORATED and DJO, LLC f/k/a DJ ORTHOPEDICS, INC. and, upon information and belief, wholly owned by DJO OPCO HOLDINGS, INC. are all Delaware corporations with their principal places of business in Vista, California. Defendants DJO INCORPORATED and DJO, LLC f/k/a DJO ORTHOPEDICS, INC. manufactures pain pumps which are the subject of this action, which are sold throughout the State of Florida and worldwide. Defendant REABLE THERAPEUTICS, LLC is a Delaware corporation with its principal place of business in Austin, Texas, and is the parent company for Defendants DJO INCORPORATED and DJO, LLC f/k/a DJ ORTHOPEDICS, INC.

21.    Defendant ZIMMER HOLDINGS, INC. is a corporation organized under the laws of Delaware, having its principal place of business in Warsaw, Indiana.

22.    Defendant ZIMMER HOLDINGS, INC. conducted regular and sustained business in Florida by selling and distributing their pain pump products in Florida as described below.

23.    Defendant B. BRAUN MEDICAL is a company organized under the laws of the State of Pennsylvania, having its principal place of business in Bethlehem, Pennsylvania.

24.    Defendant B. BRAUN MEDICAL conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

25.    Defendant SGARLATO R.P., INC. d/b/a SGARLATO LABS, INC. is a corporation organized under the laws of the State of California, having its principal place of business in Campbell, California.

4

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

26.    Defendant SGARLATO R.P., INC. d/b/a SGARLATO LABS, INC. conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

27.    Defendant SMI LIQUIDATING, INC., f/k/a SORENSON MEDICAL, INC. (hereinafter "SMI LIQUIDATING"), is a corporation organized under the laws of the State of Utah, having its principal place of business in Salt Lake City, Utah.

28.    Defendant SMI LIQUIDATING conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

29.    Defendant SORENSON MEDICAL, INC. (hereinafter "SORENSON"), is a corporation organized under the laws of the State of Utah, having its principal place of business in West Jordan, Utah.

30.    Defendant SORENSON MEDICAL, INC. conducted regular and sustained business in Florida by selling and distributing its pain pump products in Florida as described below.

31.    Defendants STRYKER DEFENDANTS, BREG, INC., DJO LLC f/k/a DJ ORTHOPEDICS, INC., DJO OPCO HOLDINGS, INC., REABLE THERAPEUTICS, INC., I-FLOW CORPORATION, MCKINLEY MEDICAL, LLC, MOOG, INC., CURLIN MEDICAL, INC., ZIMMER HOLDINGS, INC., B. BRAUN MEDICAL, SGARLATO R.P., INC. d/b/a SGARLATO LABS, INC., SMI LIQUIDATING, INC. f/k/a SORENSON MEDICAL, INC. are collectively referred to herein as DEFENDANT PAIN PUMP MANUFACTURERS.

32.    Defendant HOSPIRA, INC. is a corporation organized under the laws of the State of Delaware, having its principal place of business in Lake Forest, Illinois.

5

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

33.    Defendant HOSPIRA, INC. conducted regular and sustained business in Florida by selling and distributing its anesthetic drug products in Florida as described below.

34.    Through its subsidiaries and divisions, Defendant HOSPIRA, INC., researches, develops, manufactures, and markets pharmaceutical products, including Marcaine, which is Defendant HOSPIRA INC.'s brand name for the generic anesthetic, bupivacaine, used in pain pumps manufactured and marketed by DEFENDANT PAIN PUMP MANUFACTURERS.

35.    Defendant ABBOTT LABORATORIES is incorporated under the laws of the State of Illinois, having its principal place of business in Abbott Park, Illinois.

36.    Defendant ABBOTT LABORATORIES conducted regular and sustained business in Florida by selling and distributing its anesthetic drug products in Florida as described below.

37.    Through its subsidiaries and divisions, Defendant ABBOTT LABORATORIES researches, develops, manufactures, and markets pharmaceutical products, including Marcaine, which is Defendant ABBOTT LABORATORIES' brand name for the generic anesthetic, bupivacaine, used in the pain pumps manufactured and marketed by DEFENDANT PAIN PUMP MANUFACTURERS.

38.    Defendant AstraZeneca PLC is a global pharmaceutical corporation headquartered in London, England. Defendants ASTRAZENECA PHARMACEUTICALS, LP, ZENECA HOLDINGS, INC. and ASTRAZENECA LP are subsidiaries of AstraZeneca PLC.

39.    Defendant ASTRAZENECA PHARMACEUTICALS, LP is incorporated under the laws of the State of Delaware, having its principal place of business in Wilmington, Delaware.

6

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

40. Defendant ASTRAZENECA PHARMACEUTICALS, LP conducted regular and sustained business in Florida by selling and distributing its anesthetic drug products in Florida as described below.

41. Through its subsidiaries and divisions, Defendant ASTRAZENECA PHARMACEUTICALS, LP researches, develops, manufactures, and markets pharmaceutical products, including Sensorcaine, which is Defendant ASTRAZENECA PHARMACEUTICALS, LP's brand name for the generic anesthetic, bupivacaine, used in the pain pumps manufactured and marketed by DEFENDANT PAIN PUMP MANUFACTURERS.

42. Defendant ASTRAZENECA, LP is incorporated under the laws of the state of Delaware, having its principal place of business in Wilmington, Delaware.

43. Defendant ASTRAZENECA, LP conducted regular and sustained business in Florida and New York by selling and distributing its anesthetic drug products in Florida as described below.

44. Through its subsidiaries and divisions, Defendant ASTRAZENECA, LP researches, develops, manufactures, and markets pharmaceutical products, including Sensorcaine, which is Defendant ASTRAZENECA LP's brand name for the generic anesthetic drug used in the pain pumps manufactured and marketed by DEFENDANT PAIN PUMP MANUFACTURERS.

45. Defendant APP PHARMACEUTICALS, LLC is a wholly-owned subsidiary of APP PHARMACEUTICALS, INC. and both are Delaware corporations with their principal places of business in Schaumberg, Illinois. Defendant ABRAXIS BIOSCIENCE, INC. is a Delaware corporation with its principal place of business in Los Angeles, California. Upon information and belief, in November of 2007, Defendant ABRAXIS BIOSCIENCE, INC.

7

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

separated into two distinct publicly-traded corporations: Defendant ABRAXIS BIOSCIENCE, INC. and Defendant APP PHARMACEUTICALS, INC. Further, upon information and belief, Defendant ABRAXIS BIOSCIENCE, LLC, also a Delaware corporation with its principal place of business in Los Angeles, California, merged into Defendant ABRAXIS BIOSCIENCE, INC. Collectively, these Defendants are referred to as "APP DEFENDANTS." The APP DEFENDANTS research, develop, manufacture, and market pharmaceutical products, including anesthetic drugs used in the pain pumps manufactured and marketed by Defendants identified herein.

46. Defendants HOSPIRA, INC., ASTRAZENECA PHARMACEUTICALS, LP, ASTRAZENECA, LP, ZENECA HOLDINGS, INC., APP PHARMACEUTICALS, INC., ZENECA HOLDINGS, INC., APP PHARMACEUTICALS, LLC, ABRAXIS BIOSCIENCE, LLC, ABRAXIS BIOSCIENCE, INC. and ABBOTT LABORATORIES are collectively referred to herein as DEFENDANT ANESTHETIC MANUFACTURERS.

47. DEFENDANT ANESTHETIC MANUFACTURERS and DEFENDANT PAIN PUMP MANUFACTURERS are collectively referred to as Defendants.

## FACTUAL BACKGROUND

48. Plaintiff ASHLEY JOZWIAK underwent stabilization shoulder surgery on her right shoulder in the city of Orlando, Florida, on March 23, 2005 at Orlando Regional Healthcare System. During the procedure, a postoperative "pain pump" was implanted into her shoulder by her orthopedic surgeon. The pain pump injected anesthetic or pain relief medication directly into Plaintiff's glenohumeral shoulder joint on a continuous basis following her surgery.

8

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

49.    As a result of Defendants' products, Plaintiff ASHLEY JOZWIAK has suffered severe and rapid loss of articular cartilage in her right shoulder, resulting in a diagnosis of chondrolysis, loss of range of motion, loss of functional use of her arm, and severe and permanent pain and suffering as well as other injuries.

50.    At all relevant times, DEFENDANT PAIN PUMP MANUFACTURERS designed, manufactured, marketed, and distributed a product called a "pain pump," which is a medical device that delivers, via a catheter implanted under the skin, a continuous dose of pain relief medication directly into the glenohumeral shoulder joint.

51.    The pain relief medication, generically named bupivacaine, flows directly into the glenohumeral joint, for 48 hours or more immediately following arthroscopic or open shoulder surgery.

52.    Upon information and belief, Marcaine, although a registered trademark of Abbott Laboratories, is often used as a generic term for bupivacaine or other similar anesthetic drugs. Upon information and belief, Sensorcaine, a registered trademark of AstraZeneca, is another anesthetic drug that may be referred to generically as bupivacaine or Marcaine. These anesthetic drugs, whether mixed with epinephrine or not and as marketed under various trade names, are referred to herein as "bupivacaine products."

53.    At all relevant times, DEFENDANT ANESTHETIC MANUFACTURERS designed, manufactured, marketed, and distributed bupivacaine products for use in orthopedic surgery, specifically arthroscopic surgery.

54.    Bupivacaine products are commonly used in pain pump devices, including the pain pump used following Plaintiff's shoulder surgery.

9

10

55.    However, the continuous injection of the bupivacaine products into the shoulder joint via the pain pump causes the destruction of chondrocytes, which are the cells that form the protective cartilage in the shoulder. When the protective cartilage is destroyed by the bupivacaine products, a patient experiences intense pain and is often diagnosed with glenohumeral chondrolysis.

56.    Glenohumeral chondrolysis is the progressive destruction of articular cartilage in the glenohumeral joint (the joint that connects the arm to the shoulder) leading to secondary joint space narrowing, which results in constant pain and loss of full use of the shoulder and/or arm.

57.    Postarthroscopic glenohumeral chondrolysis (PAGCL) is glenohumeral chondrolysis that results after arthroscopic surgery on the shoulder.

58.    Postarthroscopic glenohumeral chondrolysis (PAGCL) was first widely identified in 2004 in Petty DH, et al, *Glenohumeral chondrolysis after shoulder arthroscopy: case reports and review of literature. Am J Sports Med. 2004; 32:509-515.*

59.    In 2007, an article written by Hansen, Brent, et al, established an epidemiological correlation between the use of pain pumps after arthroscopic surgery on the shoulder and glenohumeral chondrolysis. Hansen, Brent, et al, *Postarthroscopic Glenohumeral Chondrolysis, Am J Sports Med. 2007; 35:1628-34.*

60.    This article provided further support to the previous studies done since the 1980s, which established that bupivacaine is toxic to chondrocytes in animals.

61.    Despite the wealth of scientific information available, Defendants failed to recognize and warn of the correlation between the continuous injection of bupivacaine products through a pain pump into the shoulder joint and the destruction of chondrocytes and cartilage.

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

62.    Upon information and belief, Defendants knew or should have known about the correlation between pain pump use and glenohumeral chondrolysis, yet still promoted, sold, advertised, and marketed the use of pain pumps and bupivacaine products for use after shoulder and other joint surgeries.

63.    Upon information and belief, DEFENDANT PAIN PUMP MANUFACTURERS sought and were denied FDA approval for the use of pain pumps containing bupivacaine products following shoulder surgery.

64.    Glenohumeral chondrolysis has no effective treatment. Most affected patients ultimately require on or more shoulder replacement surgeries.

65.    Total joint replacement is a surgical procedure in which certain parts of an arthritic or damaged joint, such as a shoulder joint, are removed and replaced with a plastic or metal device called a prosthesis, or artificial joint. The artificial joint is designed to move just like a normal, healthy joint. The artificial shoulder joint can have either two or three parts, depending on the type of surgery required.

a.    The humeral component (metal) is implanted in the humerus;

b.    The humeral head component (metal) replaces the humeral head at the top of the humerus; and

c.    The glenoid component (plastic) replaces the surface of the glenoid socket.

66.    As a result of the manufacture, marketing, advertising, promotion, distribution and/or sale of pain pumps containing bupivacaine products by Defendants to Plaintiff herein, Plaintiff has sustained severe and permanent personal injuries.

**COUNT I**

11

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

67.   Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein
by reference.

68.   DEFENDANT PAIN PUMP MANUFACTURERS had a duty to exercise
reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting,
packaging, sale and/or distribution of pain pumps into the stream of commerce, including a duty
to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

69.   DEFENDANT ANESTHETIC MANUFACTURERS had a duty to exercise
reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting,
packaging, sale and/or distribution of bupivacaine products into the stream of commerce,
including a duty to assure that the product would not cause users to suffer unreasonable,
dangerous side effects.

70.   Defendants failed to exercise ordinary care in the designing, researching,
manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance,
quality control, and/or distribution of the pain pumps and/or bupivacaine products into interstate
commerce in that Defendants knew or should have known that using pain pumps and/or
bupivacaine products placed users at risk for developing serious and dangerous side effects
including but not limited to, loss of shoulder mobility and range of motion, loss of use of the
shoulder, as well as other severe and personal injuries which are permanent and lasting in nature,
physical pain and mental anguish, including diminished enjoyment of life, as well as the need for
lifelong medical treatment, monitoring and/or medications, and fear of developing any of the
above named health consequences.

71.   The negligence of the Defendants, their agents, servants, and/or employees,
included but was not limited to the following acts and/or omissions:

12

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

a. manufacturing, producing, promoting, formulating, creating, and/or designing intra-articular pain pumps without thoroughly testing them;

b. manufacturing, producing, promoting, formulating, creating, and/or designing intra-articular pain pumps without adequately testing them;

c. not conducting sufficient testing programs to determine whether or not the aforesaid pain pumps were safe for use; in that Defendants herein knew or should have known that intra-articular pain pumps were unsafe and unfit for use by reason of the dangers to its users;

d. selling the intra-articular pain pumps without making proper and sufficient tests to determine the dangers to its users;

e. negligently failing to adequately and correctly warn the Plaintiff, the public, and/or the medical and healthcare profession, and/or the FDA of the dangers of intra-articular pain pumps;

f. negligently failing to recall its dangerous and defective intra-articular pain pumps at the earliest date that it became known that said pain pumps were, in fact, dangerous and defective;

g. failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, intra-articular pain pumps;

h. failing to test the pain pumps and/or failing to adequately, sufficiently and properly test intra-articular pain pumps.

i. negligently advertising and recommending the use of the aforesaid intra-articular pain pumps without sufficient knowledge as to its dangerous propensities;

j. negligently representing that said intra-articular pain pumps were safe for use for their intended purpose, when, in fact, they were unsafe;

k. negligently representing that the use intra-articular pain pumps in the glenohumeral joint had equivalent safety and efficacy as use in other joints of the human body;

l. negligently designing intra-articular pain pumps in a manner which was dangerous to their users;

13

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

    m.  negligently manufacturing intra-articular pain pumps in a manner which was dangerous to their users;

    n.  negligently producing intra-articular pain pumps in a manner which was dangerous to their users;

    o.  negligently assembling intra-articular pain pumps in a manner which was dangerous to their users;

    p.  concealing information concerning tests, and/or reports, and/or studies from the Plaintiff showing that intra-articular pain pumps were unsafe, dangerous, and/or non-conforming with accepted industry standards;

    q.  improperly concealing and/or misrepresenting information from the Plaintiff, healthcare professionals, and/or the public, concerning the severity of risks and dangers of intra-articular pain pumps; and

    r.  Defendants violated statutes, rules and ordinates concerning the manufacturing, marketing, and/or testing of their product.

72.    Defendants under-reported, underestimated and downplayed the serious danger of intra-articular pain pumps.

73.    Defendants negligently compared the safety risk and/or dangers of the use of intra-articular pain pumps in the shoulder to other uses for the pain pump.

74.    Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of intra-articular pain pumps in that they:

    a.  failed to use due care in designing and manufacturing intra-articular pain pumps so as to avoid the aforementioned risks to individuals when the pain pumps were used for their intended purpose in the glenohumeral joint;

    b.  failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the exposure of the cartilage of the glenohumeral joint to the medication administered through intra-articular pain pumps;

14

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

    c.  failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of intra-articular pain pumps;

    d.  failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

    e.  failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of intra-articular pain pumps;

    f.  failed to warn Plaintiff, prior to actively encouraging the sale of the intra-articular pain pumps and bupivacaine, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

    g.  failed to provide that level of information that an ordinary consumer, including Plaintiff, would expect when using the pain pump and bupivacaine products in a manner reasonably foreseeable by Defendants; and

    h.  were otherwise careless and/or negligent.

75.    Despite the fact that Defendants knew or should have known that intra-articular pain pumps using bupivacaine products caused unreasonably dangerous side effects, Defendants continued to market, manufacture, distribute and/or sell pain pumps to consumers, including to the Plaintiff.

76.    Based on the aforesaid, DEFENDANT ANESTHETIC MANUFACTURERS had a duty to warn physicians of the dangers of using their bupivacaine products for long periods of time in joint spaces, but failed to do so.

77.    DEFENDANT ANESTHETIC MANUFACTURERS also had a duty to test and investigate the use of their local anesthetic drugs in arthroscopic surgery, but failed to do so.

15

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

78.    DEFENDANT ANESTHETIC MANUFACTURERS were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of bupivacaine drugs in that they:

a.    failed to test and investigate the use of their bupivacaine drugs in arthroscopic surgery;

b.    failed to instruct or warn the U.S. medical community that the safety of their bupivacaine drugs had not been established for use with pain pumps in the glenohumeral joint;

c.    failed to disclose to the U.S. medical community that continuous injection of commonly used anesthetics, such as the bupivacaines marketed as Marcaine and Sensorcaine, into the glenohumeral joint can cause serious and permanent injury to the joint cartilage;

d.    failed to instruct or otherwise include a precaution against placing the catheter of the intra-articular pain pump loaded a bupivacaine drug in the shoulder joint space;

e.    failed to provide to the U.S. medical community adequate instructions for the safe use of bupivacaine and to warn physicians to use only those medications that could be safely and effectively used in the shoulder joint space;

f.    failed to disclose to the U.S. medical community that the effectiveness of bupivacaine was uncertain for use with intra-articular pain pumps in the shoulder joint space;

g.    manufactured bupivacaine with the knowledge that these drugs were being marketed by DEFENDANT PAIN PUMP MANUFACTURERS for use with intra-articular pain pumps in the shoulder joint space and at dangerously high doses, and knew that use of these drugs in such a manner was associated with damage to articular cartilage;

h.    promoted bupivacaine for use in pain pumps, and specifically for use at high doses in the shoulder joint space without FDA approval for such indications; and

i.    failed to warn pain pump manufacturers and sellers not to promote the use of bupivacaine with pain pumps for infusion directly into the shoulder joint space.

16

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

79.    Defendants' actions, by violating statutes, ordinances and/or rules and regulations, constituted negligence per se.

80.    Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

81.    Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

82.    As of the result of the foregoing actions by Defendants, Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-judgment interest, and such other relief as this Court deems just. Plaintiff further demands trial by jury.

## COUNT II

83.    Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein by reference.

17

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

84. At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed intra-articular pain pumps and bupivacaine products as hereinabove described that were used in the Plaintiff.

85. That intra-articular pain pumps and/or bupivacaine products were expected to and did reach the usual consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by the Defendants.

86. At those times, the intra-articular pain pumps and/or bupivacaine products were in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, Plaintiff ASHLEY JOZWIAK.

87. The intra-articular pain pumps and/or bupivacaine products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective in design or formulation in that, when the products left the hands of the respective manufacturers and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of the aforesaid pain pumps and bupivacaine products.

88. At all times herein mentioned, the intra-articular pain pumps and/or bupivacaine products were in a defective condition and unsafe, and Defendants knew or had reason to know that said products were defective and unsafe, especially when used in the form and manner as provided by the Defendants and/or reasonably foreseeable by Defendants.

89. Defendants knew, or should have known, that at all times herein mentioned their intra-articular pain pumps and/or bupivacaine products were in a defective condition, were and are inherently dangerous and unsafe, and would not perform as safely as an ordinary consumer,

18

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

including Plaintiff, would expect when used as intended or in a manner reasonably foreseeable to Defendants.

90.    At the time of the implantation of the intra-articular pain pumps and/or bupivacaine products into Plaintiff, the aforesaid products were being used for the purposes and in a manner normally intended or reasonably foreseeable to Defendants, namely for use in conjunction with surgery on the glenohumeral joint.

91.    Defendants with this knowledge voluntarily designed their intra-articular pain pumps and/or bupivacaine products in a dangerous condition for use by the public, and in particular the Plaintiff, ASHLEY JOZWIAK.

92.    Defendants had a duty to create intra-articular pain pumps and/or bupivacaine products that were not unreasonably dangerous for their normal, intended use or reasonably foreseeable use.

93.    The intra-articular pain pumps and/or bupivacaine products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were manufactured defectively in that said products left the hands of Defendants in a defective condition and were unreasonably dangerous to their intended users, including Plaintiff.

94.    The intra-articular pain pumps and/or bupivacaine products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached their intended users, including Plaintiff, in the same defective and unreasonably dangerous condition in which the Defendants' products were manufactured.

95.    Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed defective products that created an unreasonable risk to the health

19

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

of consumers, including Plaintiff, and Defendants are therefore strictly liable for the injuries sustained by the Plaintiff herein.

96.    Plaintiff could not, through the exercise of reasonable care, discover the defective nature of using the intra-articular pain pumps and/or bupivacaine products herein mentioned and perceived their dangers.

97.    The intra-articular pain pumps and/or bupivacaine products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings or instructions, as the Defendants knew or should have known that the product created a risk of serious and dangerous side effects including, but not limited to, pain, loss of the range of motion in the arm, loss of use of the affected arm, need for subsequent surgery or surgeries to replace the shoulder joint and/or the shoulder itself, and/or other severe and permanent health consequences.

98.    The intra-articular pain pumps and/or bupivacaine products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate warnings and/or inadequate testing.

99.    The intra-articular pain pumps and/or bupivacaine products designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants were defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or should have known of the risks of serious side effects including, but not limited to, pain, loss of the range of motion in her arm, loss of use of her affected arm, need for subsequent surgery to replace the shoulder joint and/or the shoulder itself, and/or other severe and permanent health consequences.

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

100.  As a result of the foregoing, Defendants are strictly liable in tort to the Plaintiff for the manufacturing, marketing, promoting, distribution, and selling of defective intra-articular pain pumps and/or bupivacaine products.

101.  As of the result of Defendants' defective products, Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-judgment interest, and such other relief as this Court deems just.  Plaintiff further demands trial by jury.

## COUNT III

102.  Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein by reference.

103.  DEFENDANT PAIN PUMP MANUFACTURERS expressly warranted that pain pumps were safe and well accepted by users.

104.  The pain pumps do not conform to these express representations because they are not safe and they have numerous serious side effects, many of which were not accurately warned about by Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer, and/or is at increased risk to suffer severe and permanent personal injuries, harm and/or economic loss.

21

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

105.  DEFENDANT ANESTHETIC MANUFACTURERS expressly warranted that bupivacaine products were safe and well accepted by users.

106.  The bupivacaine products do not conform to these express representations because they are not safe and they have numerous serious side effects, many of which were not accurately warned about by Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer, and/or is at increased risk to suffer severe and permanent personal injuries, harm and/or economic loss.

107.  Plaintiff did rely on the express warranties of the Defendants herein.

108.  Members of the medical community, including physicians and/or other healthcare professionals, relied upon the representations and warranties of the Defendants for use of the pain pumps and/or bupivacaine products in recommending and/or dispensing the pain pumps.

109.  The Defendants herein breached the aforesaid express warranties, as their pain pumps and/or bupivacaine products were defective.

110.  Defendants expressly represented to Plaintiff, and/or her physicians, healthcare providers and/or the FDA that the pain pump and/or bupivacaine products were safe and fit for use for the purposes intended, that they were of merchantable quality, that they did not produce any dangerous side effects in excess of those risks associated with other, non-defective analgesics, that the side effects they did produce were accurately reflected in the warnings and that they were adequately tested and fit for their intended use.

111.  Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the pain pumps and/or bupivacaine products were not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendants.

22

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

112. As of the result of the foregoing breach of express warranties by Defendants, Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-judgment interest, and such other relief as this Court deems just. Plaintiff further demands trial by jury.

## COUNT IV

113. Plaintiff realleges paragraphs 1 through 64 which are incorporated herein by reference.

114. At all times herein mentioned, the DEFENDANT PAIN PUMP MANUFACTURERS manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold the pain pumps for use after shoulder surgery.

115. At all times herein mentioned, the DEFENDANT ANESTHETIC MANUFACTURERS manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold bupivacaine products for use after shoulder surgery.

116. At the time Defendants marketed, sold, and distributed the pain pumps and/or bupivacaine products for use by Plaintiff, Defendants knew of the use for which the pain pumps

23

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

117. The DEFENDANT PAIN PUMP MANUFACTURERS impliedly represented and warranted to the users of the pain pumps and/or their physicians, and/or healthcare providers, and/or the FDA that the pain pumps were safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

118. The DEFENDANT ANESTHETIC MANUFACTURERS impliedly represented and warranted to the users of the bupivacaine products, and/or their physicians, and/or healthcare providers and/or the FDA that the bupivacaine products were safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

119. That said representations and warranties aforementioned were false, misleading, and inaccurate in that the pain pumps and/or bupivacaine products were unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

120. Plaintiff and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose from Defendants.

121. Plaintiff and/or her physicians and/or healthcare professionals reasonably relied upon the skill and judgment of Defendants as to whether the pain pumps and/or bupivacaine products were of merchantable quality and safe and fit for its intended use.

122. The pain pumps and/or bupivacaine products were placed into the stream of commerce by the Defendants in a defective, unsafe, and inherently dangerous condition and the products and materials were expected to and did reach users, handlers, and persons coming into

24

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

contact with said products, including Plaintiff, without substantial change in the condition in
which they were sold.

123. The Defendants herein breached the aforesaid implied warranties, as their pain
pumps and/or bupivacaine products were not fit for their intended purposes and uses.

124. As of the result of the foregoing breach of implied warranties by Defendants,
Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and
suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-
existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and
expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses
will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all
Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-
judgment interest, and such other relief as this Court deems just. Plaintiff further demands trial
by jury.

## COUNT V

125. Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein
by reference.

126. The Defendants falsely and fraudulently represented to the medical and healthcare
community, to the Plaintiff, the public in general, and/or the FDA that said products, the pain
pumps and/or bupivacaine products, had been tested and were found to be safe and/or effective
for the control of pain after shoulder surgery.

127. These representations made by Defendants were, in fact, false.

25

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

128.   When said representations were made by Defendants, they knew those representations to be false, and they willfully, wantonly and recklessly disregarded whether the representations were true.

129.   These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, Plaintiff, and the medical and healthcare community in particular, to recommend, dispense and/or purchase said products, the pain pumps and/or bupivacaine products, for use as a delivering device for analgesics.

130.   At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiff used the pain pumps and/or bupivacaine products, the Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

131.   In reliance upon said representations, the Plaintiff was induced to and did use the pain pumps and/or bupivacaine products, thereby sustaining severe and permanent personal injuries, and/or being at an increased risk of sustaining severe and permanent personal injuries in the future.

132.   Said Defendants knew, were aware, or should have been aware that the pain pumps had not been sufficiently tested, were defective in nature, that they lacked adequate and/or sufficient warnings, and that the products were unreasonably dangerous and would not perform as safely as an ordinary consumer such as Plaintiff would expect when the pain pumps and/or bupivacaine products were used as intended or in a manner reasonably foreseeable to Defendants.

26

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

133.   Defendants knew or should have known that the pain pumps and/or bupivacaine products had a potential to, could, and would cause severe and grievous injury to the users of said product, and that they were inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

134.   Defendants brought the pain pumps and/or bupivacaine products to the market, and acted fraudulently, recklessly, wantonly and maliciously to the detriment of the Plaintiff.

135.   Defendants' fraudulent acts were the proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

136.   As of the result of the foregoing actions by Defendants, Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-judgment interest, and such other relief as this Court deems just. Plaintiff further demands trial by jury.

### COUNT VI

137.   Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein by reference.

27

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

138. At all times during the course of dealing between Defendants and Plaintiff, Plaintiff's healthcare providers, the medical and healthcare community, the general public, and/or the FDA, Defendants misrepresented the safety of the pain pumps and/or bupivacaine products for their intended use.

139. At all times during the course of dealing between Defendants and Plaintiff, Plaintiff's healthcare providers, the medical and healthcare community, the general public, and/or the FDA, Defendants misrepresented the dangers associated with use of pain pumps and exposure of bupivacaine products to cartilage.

140. Defendants knew or were reckless in not knowing that its representations were false.

141. In representations to Plaintiff, Plaintiff's healthcare providers, the medical and healthcare community, the general public, and/or the FDA, Defendants fraudulently concealed and intentionally omitted the following material information:

    a. That pain pumps and/or bupivacaine products are not as safe as other available analgesics;

    b. That the risks of adverse events with the pain pumps and/or bupivacaine products were higher than those with other available analgesics;

    c. That the risks of adverse events with pain pumps and/or bupivacaine products were not adequately tested and/or known by Defendants;

    d. That Defendants were aware of the dangers of exposing cartilage to bupivacaine products in addition to and above and beyond those associated with other available analgesics;

28

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

     e. Plaintiff was put at risk of experiencing serious and dangerous side effects including but not limited to, loss of shoulder mobility and range of motion, loss of use of the shoulder, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish;

     f. That patients needed to be monitored more regularly than normal while using the pain pumps and/or bupivacaine products;

     g. That the pain pumps and/or bupivacaine products were manufactured, marketed, produced, and distributed negligently;

     h. That the pain pumps and/or bupivacaine products were manufactured, marketed, produced, and distributed defectively;

     i. That the pain pumps and/or bupivacaine products were manufactured, marketed, produced, and distributed improperly;

     j. That the pain pumps and/or bupivacaine products were designed negligently;

     k. That the pain pumps and/or bupivacaine products were designed defectively; and

     l. That the pain pumps and/or bupivacaine products were designed improperly.

142. Defendants were under a duty to disclose to Plaintiff, her physicians, the medical and healthcare community, the general public, and/or the FDA, the defective nature of the pain pumps and/or bupivacaine products.

143. Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used the pain pumps and/or bupivacaine products as intended or in a manner reasonably foreseeable to Defendants, including the Plaintiff in particular.

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

144. Defendants' concealment and omissions of material facts concerning, inter alia, the dangers of associated with use of pain pumps and/or bupivacaine products after shoulder surgery was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiff, her physicians, the medical and healthcare community, and the general public into reliance, continued use of pain pumps, and actions thereon, and to cause them to purchase, recommend, and/or dispense pain pumps and/or bupivacaine products and/or use the products.

145. Defendants knew that Plaintiff, her physicians, the medical and healthcare community, the general public, and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding pain pumps and/or bupivacaine products, as set forth herein.

146. Plaintiff, as well as her doctors, the medical and healthcare community, and the general public reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

147. Defendants' fraudulent acts and concealment were the proximate cause of Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

148. As of the result of the foregoing actions by Defendants, Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

judgment interest, and such other relief as this Court deems just. Plaintiff further demands trial

by jury.

## COUNT VII

149.  Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein

by reference.

150.  Defendants had a duty to truthfully represent to the medical and healthcare

community, to the Plaintiff, the FDA, and/or the public in general that said pain pumps and/or

bupivacaine products, had been tested and found to be safe and effective for their intended use in

shoulders.

151.  These representations regarding the safety and testing of pain pumps and/or

bupivacaine products made by Defendants were, in fact, false.

152.  Defendants failed to exercise ordinary care in the representation of the pain

pumps, while involved in their manufacture, sale, testing, quality assurance, quality control,

and/or distribution of said product into interstate commerce, in that Defendants negligently

misrepresented the high risk of unreasonable, dangerous side effects associated with pain pumps

and/or bipuvacaine products.

153.  Defendants breached their duty by misrepresenting the serious side effects

associated with use of pain pumps and/or bipuvacaine products to the medical and healthcare

community, Plaintiff, her physicians, the FDA and/or the public in general.

154.  Defendants' negligently misrepresentations were the proximate cause of

Plaintiff's injuries, harm and economic loss which she suffered and/or will continue to suffer.

31

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

155. As of the result of the foregoing actions by Defendants, Plaintiff ASHLEY JOZWIAK experienced serious damage including bodily injury, pain and suffering, disability, physical impairment, mental anguish, inconvenience, aggravation of a pre-existing condition, loss of the capacity for the enjoyment of life, the costs of medical care and expenses, loss of earnings and loss of the ability to earn money, all of which damages and losses will continue in the future.

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants in an amount in excess of $15,000.00, together with the costs of this action, post-judgment interest, and such other relief as this Court deems just. Plaintiff further demands trial by jury.

## COUNT VIII

156. Plaintiff realleges paragraphs 1 through 64 above which are incorporated herein by reference.

157. Defendants conducted research and used the pain pumps and/or bupivacaine products as part of their research.

158. As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiff, her doctors, the medical and healthcare community, the general public, and/or the FDA that the pain pumps and/or bupivacaine products were safe for their intended use in the shoulder joints.

32

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

159. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to the public, the FDA the medical and healthcare community, and Plaintiff.

160. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiff, as well as the medical and healthcare community and/or the FDA.

161. The information distributed to the public, the FDA, the medical and healthcare community, and the Plaintiff by Defendants, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media contained material representations of fact and/or omissions.

162. The information distributed to the public, the FDA, the medical and healthcare community, and the Plaintiff by Defendants intentionally included representations that Defendants' pain pumps and/or bupivacaine products were safe for their intended use in shoulder joints.

163. The information distributed to the public, the FDA, the medical and healthcare community, and the Plaintiff by Defendants intentionally included representations that Defendants' pain pumps and/or bupivacaine products carried the same risks, hazards, and/or dangers as other available analgesics.

164. The information distributed to the public, the FDA, the medical and healthcare community, and the Plaintiff by Defendants intentionally included false representations that the pain pumps and/or bupivacaine products were not injurious to the health and/or safety of its intended users.

165. These representations were all false and misleading.

33

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

166. Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to the Defendants, and results that demonstrated that the pain pumps and/or bupivacaine products were not safe for use in shoulders and/or were not as safe as other available analgesics.

167. Defendants intentionally made material representations to the FDA, the general public, the medical and healthcare community, and/or the Plaintiff regarding the safety of the pain pumps, specifically but not limited to the pain pumps and/or bupivacaine products not having dangerous and serious health and/or safety concerns.

168. Defendants intentionally made material representations to the FDA, the general public, the medical or healthcare community, and/or Plaintiff regarding the safety of the pain pumps and/or bupivacaine products.

169. That it was the purpose of Defendants in making these representations to deceive and defraud the public, the FDA, the medical and healthcare community, and/or the Plaintiff in order to gain their confidence and to falsely represent the quality and fitness for use of the pain pumps and/or bupivacaine products and induce the public, the medical and healthcare community, and/or the Plaintiff to purchase, request, dispense, recommend, implant and/or continue to use said products.

170. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, the FDA, healthcare professionals, and/or the Plaintiff that the pain pumps and/or bupivacaine products were fit and safe for use in shoulder joints.

171. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, the FDA, healthcare professionals, and/or the Plaintiff that the pain pumps and/or bupivacaine products were fit and safe for use in shoulder joints and did

34

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

not pose risks, dangers, or hazards above and beyond those identified and/or associated with other available analgesics.

172.  Defendants made claims and representations in its documents submitted to the FDA, the public, to healthcare professionals, and the Plaintiff that the pain pumps and/or bupivacaine products did not present serious health and/or safety risks.

173.  Defendants made claims and representations in its documents submitted to the FDA, the public, to healthcare professionals, and/or the Plaintiff that the pain pumps and/or bupivacaine products did not present health and/or safety risks greater than other available analgesics.

174.  Defendants knew that these representations were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

175.  These representations and others, made by Defendants, were made with the intention of deceiving and defrauding the Plaintiff, the general public, the medical and healthcare community, and/or the FDA, and were made in order to induce the Plaintiff and/or her healthcare professionals to rely upon misrepresentations and caused the Plaintiff and/or her healthcare professionals to purchase, use, rely on, request, dispense, and/or recommend the pain pump and/or bupivacaine products.

176.  Defendants, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products to the public at large, including the Plaintiff, as well as the medical and healthcare community for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other available analgesics.

35

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

177.  Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of the pain pumps and/or bupivacaine products by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products.

178.  Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiff, as well as her healthcare professionals, into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on the pain pumps and/or bupivacaine products and/or that her healthcare providers would dispense, implant, and/or recommend the same.

179.  Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiff, as well as her healthcare professionals  would rely upon the information being disseminated.

180.  Defendants utilized direct to consumer advertising to market, promote, and/or advertise the pain pumps and/or bupivacaine products.

181.  Plaintiff and/or her healthcare professionals did in fact rely on and believe the Defendants' representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of shoulder cartilage and was thereby induced to purchase, use and rely on Defendants' pain pumps and/or bupivacaine products.

182.  At the time the representations were made, the Plaintiff and/or her healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of the pain pumps and/or bupivacaine products.

36

ASHLEY L. JOZWIAK v. STRYKER CORPORATION, et al.
Complaint

WHEREFORE, Plaintiff ASHLEY JOZWIAK demands judgment against all Defendants

in an amount in excess of $15,000.00, together with the costs of this action, post-judgment

interest, and such other relief as this Court deems just. Plaintiff further demands trial by jury.

DATED this 19th day of March, 2009.

C. Calvin Warriner, III
Florida Bar No.: 374131
Brenda S. Fulmer
Florida Bar No.: 999891
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:(561) 383-9442
Attorneys for Plaintiff

38